JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, John Mungai, appeals his conviction for menacing by stalking. After a thorough review of the arguments, and for the reasons set forth below, we affirm.
 {¶ 2} On February 13, 2006, appellant was indicted on one count of menacing by stalking under R.C. 2903.211, a fourth degree felony. On October 26, 2006, a jury trial began; however, the trial court declared a mistrial on October 27, 2006. A second jury trial began on December 19, 2006. On December 21, 2006, the jury found appellant guilty of menacing by stalking. The trial court sentenced appellant to 14 months in prison.
 {¶ 3} The facts that gave rise to this appeal began in 2003. Catherine Graham ("Graham"), was the executive director at St. Malachi Center ("the center"), a neighborhood outreach branch of St. Malachi Church. Appellant regularly used the center's shower facilities and had received financial assistance.
 {¶ 4} Graham testified that in 2003, appellant asked her for help because his landlord's house was going into foreclosure. In November 2003, appellant asked Graham for help cashing a check that his landlord had made payable to an attorney.
 {¶ 5} According to Graham, she eventually met appellant's landlord, Rosemarie Samide. Samide had two black eyes and a bruised arm, which she blamed on appellant. Graham informed Samide that appellant had asked her to cash one of Samide's checks. Samide asked Graham to cash the check, but to *Page 4 
keep the money from appellant. Graham agreed and opened an account in which she used the money to pay Samide's property taxes. When appellant asked Graham for the money on several occasions, she refused.
 {¶ 6} The second time Graham met Samide, in February 2004, Samide had more bruises and a loose tooth. Graham contacted the Adult Guardianship program because she felt Samide had mental health problems. The following day, appellant came to the center and demanded that Graham give him the money she was holding. Graham testified that Samide called her in the days afterward crying that appellant was upset. Finally, in May 2004, Graham filed documents with the probate court division to have Samide declared incompetent and placed under the custody of a guardian, and Samide was assigned a guardian.
 {¶ 7} Appellant returned to the center and told Graham that he would "kill again" and physically hurt her if she did not give him the money. Finally, appellant left a voice mail for Graham stating that "he would get her," "God would get her," and "an eye for an eye." After that, Graham did not hear from appellant for some time. Eventually, a restraining order prohibited appellant from coming to St. Malachi.[1] *Page 5 
 {¶ 8} In early 2005, appellant sent Graham a letter, which she did not open. On June 11, 2005, Graham's wedding day, she spotted appellant outside St. Malachi Church, near her car.[2] By the time the police arrived, appellant had left, but he returned several times throughout the day. Graham also saw appellant following her on her way to her hair appointment earlier that day. According to Graham, appellant later returned to the church and bothered the groomsmen.
 {¶ 9} Graham saw appellant again in July 2005 at the library. Appellant yelled at her, "an eye for an eye," but a security guard helped Graham leave safely. Appellant then showed up at St. Malachi store several times between July and August 2005 and told the clerk, Roger Deiker, that he was going to harm Graham. The clerk testified that appellant was yelling and disruptive.
 {¶ 10} The pastor of St. Malachi Church, Father Anthony Schuerger ("the pastor"), testified that appellant had come to him for free food and other assistance at various times. The pastor testified that he knew that a restraining order had been placed on appellant. Several times, when the pastor informed appellant he had to leave the grounds pursuant to the restraining order, appellant became verbally abusive. The pastor testified that, before her wedding, Graham mentioned to him that she was worried appellant might show up at the wedding. The pastor saw appellant at the church, school, and rectory on Graham's wedding day. *Page 6 
 {¶ 11} Graham's mother, Nancy Saegel, testified that she told Graham to call the police after she had seen appellant at the wedding. Saegel had seen appellant leaning on Graham's car and also saw him following Graham to her hair appointment. The groom's best man, Sherman Jarrett, testified that appellant appeared at the church and told him that Graham was trying to take away his kids, that she was embezzling money from the church, and that she and the pastor would be on the news.
 {¶ 12} Finally, appellant testified on his own behalf. He testified that he was Samide's caretaker and that she had given him her power of attorney. Appellant contends there was an agreement that he could keep some profits from selling Samide's properties if he sold them for more than $50,000. According to appellant, the money he gave to Graham in December 2003 was his, not Samide's. He claimed he gave Graham the money so that she could hold onto it in case he ever ended up in jail and needed bail. He testified that he gave her a $6,000 check and a $3,000 money order, which she cashed, but refused to return the money to him. Appellant also testified that he did not know that Graham was getting married and was at the church that day coincidentally to get coffee. He contends that he was only at the library to read a newspaper the day he ran into Graham.
 Review and Analysis *Page 7 {¶ 13} Appellant brings this appeal, asserting two assignments of error for our review. Because the assignments of error are substantially interrelated, they will be addressed together.
 {¶ 14} "I. There was insufficient evidence to convict Mr. Mungai of menacing by stalking.
 {¶ 15} "II. The conviction of appellant was against the manifest weight of the evidence."
 {¶ 16} Appellant argues that there was insufficient evidence to convict him of menacing by stalking and that his conviction was against the manifest weight of the evidence. These arguments are without merit.
 {¶ 17} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, citing Jackson v.Virginia (1979), 443 U.S. 307. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988),39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the *Page 8 
essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259; Jackson v. Virginia (1979),443 U.S. 307.
 {¶ 18} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. City ofCleveland (1948), 150 Ohio St. 303, 345.
 {¶ 19} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held in Tibbs v.Florida (1982), 457 U.S. 31, that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. TheMartin court stated: *Page 9 
 {¶ 20} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Martin at 720.
 {¶ 21} A review of the facts in this case makes it clear that there was sufficient evidence to convict appellant and that his convictions were not against the manifest weight of the evidence. Under R.C.2903.211(A)(1), "no person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." Under R.C. 2903.211(D)(1), "pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."
 {¶ 22} Appellant met Graham through St. Malachi Center. On a number of occasions, Graham assisted appellant; however, after meeting his landlord, Rosemarie Samide, Graham learned that appellant was abusing Samide. As a result, Graham refused to help appellant cash a check that Samide had made payable to another person. At Samide's direct request, Graham cashed the check and withheld the funds from appellant. After Graham helped Samide obtain a guardian, appellant became extremely angry and frustrated with Graham. *Page 10 
 {¶ 23} Appellant began to verbally threaten Graham. On June 11, 2005, just three days after being released from prison, he arrived at St. Malachi Church during Graham's wedding, despite being previously restrained by court order from the St. Malachi property. He also followed her to her hair appointment earlier that day and bothered the groomsmen and best man. In July 2005, Graham saw appellant at the library, where he verbally threatened her in the presence of a security guard. Finally, between July and August 2005, appellant visited a store at St. Malachi and told the clerk that he wanted to physically harm Graham. The clerk testified that appellant looked "half-crazed."
 {¶ 24} Based on the foregoing evidence, the elements of menacing by stalking under R.C. 2903.211(A)(1) have been met. Appellant clearly engaged in a pattern of conduct. He began threatening Graham in person at St. Malachi, then on her voice mail, then in person at the library, and finally to the store clerk. Appellant also showed up at Graham's wedding. Graham clearly believed that appellant would cause her physical harm. She testified that once, while she was at work, he "told me that he had killed people before and he would kill again. * * * He was yelling at me and telling me he was going to break every bone in my body. He made me so afraid that I went into an office." Appellant's threats to Graham and to the store clerk satisfy the requirement that he "knowingly cause[d] another person to believe that [he] will cause physical harm." *Page 11 
 {¶ 25} Further, we find that his convictions were not against the manifest weight of the evidence. Numerous witnesses, including Graham, the pastor, and Graham's mother, testified on behalf of the state. Appellant testified on his own behalf. The jury had the opportunity to hear all of the testimony and chose to give credence to the state's witnesses. We find that appellant's convictions were supported by sufficient evidence and were not against the manifest weight. Accordingly, appellant's assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE
ANTHONY O. CALABRESE, JR., J., and MARY J. BOYLE, J., CONCUR
[1] The restraining order eventually expired in March 2005 when appellant was imprisoned after he pleaded guilty to menacing by stalking in a separate incident. That incident involved alleged "harassing" phone calls appellant had made to the senior vice president of Laurelwood Hospital (where Samide was staying).
[2] Appellant had been out of prison for only three days when he showed up at the wedding. *Page 1